UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Kap Jeung Tang,

               Plaintiff,             CV-03-6477 (CPS)(CLP)

    - against -             MEMORANDUM
                                                  OPINION AND
                                                      ORDER

Jinro America, Inc., JS America, Inc., and Gun Chul Lee

               Defendants.

----------------------------------------X

SIFTON, Senior Judge.

    Plaintiff Kap Jeung Tang ("Tang") brings this action against defendants Jinro America, Inc. ("JAM"), JS America, Inc. ("JSA"), and Gun Chul Lee ("Lee") to recover damages arising from the alleged wrongful termination of plaintiff's exclusive rights to distribute a premium brand of Korean liquor. Plaintiff alleges claims for: (1) breach of contract; (2) tortious interference with contract against defendants JSA and Lee; (3) tortious interference with prospective economic advantage; (4) unjust enrichment; (5) unfair competition; and (6) breach of covenant of good faith and fair dealing. On October 11, 2005, I granted defendants' motion for summary judgment on all claims. Presently before the Court is plaintiff's motion for reconsideration of portions of that

decision pursuant to Local Civil Rule 6.3. For the reasons set forth below, plaintiff's motion for reconsideration is granted in part and denied in part. Specifically, reconsideration is granted with respect to plaintiff's breach of contract claim. Upon reconsideration, however, defendants' motion for summary judgment on that claim is again granted. Reconsideration is denied with respect to the claim of breach of a covenant of good faith and fair dealing.

**Background**

Familiarity with the underlying facts and procedural history of this case, as set forth in this Court's prior decision, *Tang v. Jinro America, Inc.*, 2005 WL 2548267 (E.D.N.Y. Oct. 11, 2005), is presumed.

Plaintiff Tang, a licensed wholesaler of alcoholic beverages, is a citizen of Pennsylvania. His company, Tang's Liquor Wholesale Co., has its principal place of business in Queens, New York. Defendant JAM is a Washington state corporation with its principal place of business in the state of California. Defendant JSA is a New Jersey corporation with its principal place of business in the state of New Jersey. Defendant Lee, a citizen of New Jersey, is the President of defendant JAM and the President,

Secretary, Treasurer, sole Director and sole stockholder of defendant JSA.

Defendant JAM was for a number of years the sole importer of the Jinro brand of soju[1] ("Jinro Soju")[2] and was wholly owned by Jinro Ltd., the Korean manufacturer of the product. In 1992, JAM granted plaintiff exclusive distribution rights for Jinro Soju for five years, in a written agreement (the "1992 Agreement"). Plaintiff's territory comprised five Mid-Atlantic states and the District of Columbia (the "Territory").

On December 1, 1997, the parties entered into a new distributorship agreement (the "1997 Agreement"), with an expiration date of November 30, 1999.[3] Plaintiff alleges (and defendant disputes) that it was the parties' understanding that so long as plaintiff performed well, he could continue to be the Territory's exclusive distributor of Jinro Soju after that date. After the agreement expired, plaintiff continued to buy and distribute Jinro Soju. He did not carry competing products and no one else sold Jinro Soju in the Territory.

---

[1] Soju is a type of distilled spirits native to Korea.
[2] Plaintiff Tang contends that he began distributing Jinro Soju in 1986 "pursuant to an agreement that was either oral or, if written, has not been located." *Tang*, at *1 n.1. The time period between 1986 and 1992 is not at issue.
[3] Pursuant to this agreement, plaintiff was required to purchase the soju from defendant for resale, to maintain sales staff and a storage facility, and to bear all costs of sales activity. (1997 Agreement at 3, 6).

In late 1999, defendant Lee became president of JAM. On August 3, 2001, JAM sent a letter to plaintiff noting that the 1997 agreement had expired. The letter informed plaintiff that a new entity, JSA, owned and controlled by defendant Lee, had been created to import and sell Jinro Soju in the eastern United States.

On November 15, 2001, JSA asked plaintiff to enter into a new distributorship agreement with an expiration date of December 31, 2002 (the "2001 Agreement"). Language in the agreement stated that it was to be "valid on the date hereof" but also that it is "valid and effective upon JSA obtaining . . . necessary permits and licenses . . . ."[4] Plaintiff contends that he signed the agreement, because of threats by defendant Lee that if he did not, plaintiff would no longer enjoy an exclusive distributorship in the Territory. Defendants deny that the 2001 Agreement was ever signed.[5] The parties agree that they continued to negotiate or renegotiate the terms of a new agreement through June 2002 without success.[6]

---

[4] 2001 Agreement, at 2.
[5] Plaintiff has given conflicting testimony as to whether he signed the 2001 Agreement. (Tang Tr. at 17:17-18:4; Tang Tr. at 23:22-24:3, 76:2-76:25). Plaintiff has submitted only an unsigned copy of a translation of the agreement. Defendants assert that the agreement was never executed.
[6] When asked if plaintiff and defendant Lee ever came to an agreement about the price of the Jinro Soju, plaintiff responded, "No. We didn't agree, but he raised the price and he continued to charge that price to me." (*See* Tang Tr. at 26:17-22.).

On April 19, 2002, plaintiff was contacted by the New Jersey Division of Alcoholic Beverage Control (the "ABC") "regarding JSA's application for a distributor's license in New Jersey." (Pl.'s Mem. Opp'n Summ. J. ("Pl. Opp.") at 8.)  Plaintiff mailed a response to the ABC objecting to JSA's license application in which he alleged that defendants had engaged in discriminatory pricing and had attempted to usurp plaintiff's exclusive distribution rights.  On May 24, 2002, JSA's attorneys sent plaintiff a letter offering to allow plaintiff to continue to distribute Jinro Soju conditioned upon plaintiff's withdrawal of his objection by May 28, 2002.  Plaintiff eventually withdrew the objection, but not before May 28, 2002.

On June 3, 2002, plaintiff received a letter from defendants stating that the distributorship agreement was "terminated as of November 30, 1999 and our products shall be supplied to you [only] until June 30, 2002.  From the order for July of this year, we will not take your order any longer."  *Tang*, 2005 WL 2548267, at *2.

In December 2003, plaintiff commenced this action against defendants.  On May 4, 2005, defendants moved for summary judgment on all claims.  By written Memorandum Opinion and Order dated October 11, 2005 (the "Opinion"), I granted defendants' motion. I

concluded, *inter alia*, that plaintiff had failed to raise a dispute of material fact with respect to defendant's allegations that no express or implied contract existed between plaintiff and any of defendants at the time of plaintiff's termination. *Tang*, 2005 WL 2548267, at *5.

On October 31, 2005, plaintiff filed the present motion for reconsideration of my decision pursuant to Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.[7]

## Discussion

I.  Standard for Motion for Reconsideration

A motion for reconsideration pursuant to Local Rule 6.3 will be granted if the moving party presents factual matters or controlling decisions the court overlooked that might have materially influenced its decision. *Pereira v. Aetna Casualty and Surety Co. (In re Payroll Express Corp.)*, 921 F. Supp. 1121, 1123 (S.D.N.Y. 1996); *Violette v. Armonk Assocs., L.P.*, 823 F. Supp. 224, 226 (S.D.N.Y. 1993). Reconsideration is also appropriate in light of an intervening change of controlling law, the

---

[7] Plaintiff's attorney filed a Notice of Appeal to the Second Circuit. Because of improper filing, the Second Circuit has declined to assert jurisdiction over this matter. After learning of the Second Circuit's decision not to hear the appeal, I again take up the pending motion.

availability of new evidence, the need to correct a clear error, or to prevent manifest injustice. *Doe v. New York City Dep't of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983); *Casino, LLC v. M/V Royal Empress*, 1998 WL 566772, at *1 (E.D.N.Y. 1998). Additionally, reconsideration is appropriate where a court misinterprets or misapplies relevant case law in its original decision. *Allstate Ins. Co. v. Valley Physical Medicine & Rehabilitation*, 2008 WL 942574, at *2 (E.D.N.Y. Mar. 31, 2008); *O'Brien v. Board of Educ. of Deer Park Union Free School Dist.*, 127 F. Supp.2d 342, 346 (E.D.N.Y. 2001).

Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the court. *See Caleb & Co. v. E.I. Du Pont De Nemours & Co.*, 624 F. Supp. 747, 748 (S.D.N.Y. 1985). A Local Rule 6.3 motion is not to be used as a substitute for appeal. *See Morser v. A.T.& T. Information Systems*, 715 F. Supp. 516, 517 (S.D.N.Y. 1989); *Korwek v. Hunt*, 649 F. Supp. 1547, 1548 (S.D.N.Y. 1986). In its motion for reconsideration, a party "may not advance new facts, issues or arguments not previously presented to the court." *Lipton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 1989 WL 162315, at *3 (S.D.N.Y. 1989).

II.  Plaintiff's Motion for Reconsideration on the Reasonable Notice Claim

Plaintiff moves this Court for reconsideration of its October 11, 2005 Memorandum Opinion and Order granting defendants' motion for summary judgment on plaintiff's claim that defendants breached an express or implied agreement between the parties by failing to give plaintiff reasonable notice of termination pursuant to U.C.C. § 2-309(3).[8, 9]

Plaintiff argues that he is entitled to reconsideration on the ground that I misapplied relevant case law in my characterization and quotation of portions of *Martin v. Campanaro*, 156 F.2d 127 (2d Cir. 1946), *cert. denied,* 329 U.S. 759 (1962). In my opinion, *Tang*, 2005 WL 2548267, at *5, I stated that when

---

[8] "Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party." N.Y. U.C.C. § 2-309(3) (McKinney, 2007).

[9] This argument, and plaintiff's motion for reconsideration of my decision granting defendants' summary judgment on his breach of covenant of good faith and fair dealing claim, discussed *infra*, are all premised upon the existence of some form of contract between the parties.

U.C.C. § 2-309(3), by its terms, applies to "termination of a contract." Similarly, "there can be no covenant of good faith and fair dealing implied where there is no contract." *Lakeville Pace Mechanical, Inc. v. Elmar Realty Corp.*, 276 A.D.2d 673, 714 N.Y.S.2d 338, 342 (N.Y. App. Div. 2000). "[U]nless the existence of an agreement and its terms are established, it is futile to discuss the question of breach." *Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F. Supp. 920, 927 (E.D.N.Y 1985). Consequently, a "cause of action for breach of an implied duty of good faith and fair dealing . . . [is] properly dismissed for lack of a valid and binding contract from which such a duty would arise." *Beekman Investment Partners, L.P. v. Alene Candles, Inc.*, 2006 WL 330323 *7 (S.D.N.Y. 2006)(citing *American-European Art Assocs., Inc. v. Trend Galleries, Inc.*, 641 N.Y.S.2d 835, 836 (N.Y. App. Div. 1996)).

parties continue on the same terms of an agreement that has expired, "an implication arises that they have mutually assented to a new contract containing the same provisions as the old." *Id*., (quoting *Martin v. Campanaro,* 156 F.2d at 129). In the following sentence, I noted that the *Martin* court had concluded that "where, as here, the parties had engaged in 'subsequent unsuccessful negotiations' to enter into a new contract, a reasonable person would not believe that the parties intended to form a new contract extending the terms of the old." *Id.,* (quoting *Martin*, 156 F.2d 129-30). In other words, I misread *Martin* to preclude a finding of an implied contract with terms different from those in the 1997 Agreement.

As plaintiff points out, passages in *Martin*, 156 F.2d at 129, which were not included in my previous discussion of the case, support the proposition that a new contract could contain some, but not all, of the terms of the expired contract. *See also Daskolopoulos v. European American Bank and Trust Co*. 104 A.D.2d 1020, 1021-22 (N.Y. App. Div. 1984) (denying defendants' motion for summary judgment based on terms of lease, which had expired, because defendants "failed to establish that any new contract

between the parties contained the same limitations as the original agreement").

Plaintiff's motion is thus saved from being a repetitive argument on an issue that has been considered fully by the court. *Caleb & Co,* 624 F. Supp. at 748. Plaintiff's motion for reconsideration is therefore granted in part. Upon reconsideration, however, I arrive at the same conclusion: that no jury could conclude that an implied contract was entered into between the parties.

    A. *Formation of an Implied Contract with New Terms*

An implied contract[10] is a contract "in which some or all of the terms are inferred from the conduct of the parties and the circumstances of the case, though not expressed in words. . . . [An implied contract] has the same legal effect as an express contract; it carries as much weight and is as binding as an express contract. General contract law recognizes and enforces [implied] contracts." 17A Am.Jur.2d *Contracts* § 12 (2007)(citing 1 Williston, *Contracts* § 1:5)(footnotes omitted). An implied contract "is derived from the presumed intention of the parties as

---

[10] By "implied contract," I mean what are often called "implied-in-fact" contracts. These are not to be confused with contracts "implied in law," which are more accurately termed "quasi-contracts." 1 Samuel Williston, A Treatise on the Law of Contracts § 1:6 (Richard A. Lord ed., 4th ed. 1990).

indicated by their conduct." *Russo v. Banc of America Securities*, 2007 WL 1946541 at *4 (S.D.N.Y. 2007)(citing *Jemzura v. Jemzura*, 369 N.Y.S.2d 400 (1975)(internal quotations omitted)).

Implied contracts, of course, are not wholly without formal requirements. An implied contract, though not in writing, "still requires such elements as consideration [and] mutual assent." *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 93-94 (1999)(citing 1 Williston, Contracts § 1:5, at 22).[11] Mutual assent "must be inferred from the facts and circumstances of each case, including such factors as the specific conduct of the parties, industry custom, and course of dealing." *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 376 n.5 (2d Cir. 2000).

Implied contracts can contain terms different from those of the original, expired agreement.[12] *Martin*, 156 F.2d at 129 (parties' conduct indicated that they had entered into an implied contract under new terms); *see also Daskolopoulos v. European*

---

[11] "An implied-in-fact contract requires proof of the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity, and a lawful subject matter." 1 Williston, Contracts § 1:5. There has been no allegation that the parties did not have legal capacity or that the subject matter of any contract would have been illegal.

[12] Although plaintiff's motion for reconsideration argues that I overlooked facts that would support a finding that an implied contract was reached on the same terms as the 1997 Agreement, I decline to reconsider the portion of the Opinion. I considered this argument originally and rejected it based on plaintiff's unequivocal testimony that he believed the 1997 Agreement did not continue on the same terms. *Tang*, 2005 WL 2548267, at *5.

*American Bank and Trust Co.*, *supra* (the continuation of a specific contractual limitation had to be established by the evidence even when other aspects of the contractual relationship remain unchanged) (citing *New York Tel. Co. v. Jamestown Tel. Corp.*, 282 N.Y. 365 (1940)).

In determining whether there is an implied contract, courts must follow an "'objective' test, i.e., whether a reasonable man would think the parties intended to make such a new binding agreement [and] whether they acted as if they so intended." *Martin*, 156 F.2d at 129-30; *see also Local Union 813, International Brotherhood of Teamsters v. Waste Management of New York, LLC*, 469 F. Supp.2d 80, 84-85 (E.D.N.Y. 2007) ("Where [parties,] after the expiration of a contract . . . continue to do business together, the conduct of the parties may at times permit, *or even constrain*, a finding that the parties impliedly agree that their rights and obligations . . . should continue to be measured as provided in the old contract") (citing *New York Tel. Co.*, 282 N.Y. at 371) (emphasis added).[13]

---

[13] The new terms of the implied contract may be inferred from the course of prior dealings between the parties or the course of the parties' performance of the subsequent transactions. "New York law allows a court to find that a contract exists where 'the conduct of the parties, [allows] a fact finder [to] fairly infer the existence and terms of a contract.'" *Tower Intern., Inc. v. Caledonian Airways Ltd.*, 1996 WL 68531 at *4 (E.D.N.Y., Jan. 25, 1996)(citing *Radio Today, Inc. v. Westwood One, Inc.* 684 F. Supp. 68, 71 (S.D.N.Y. 1988); *see also Land-Site Contracting Corp. v. Marine Midland Bank*, 576 N.Y.S.2d 255

In order to support his contention that an implied contract existed on essentially the same terms as the 1997 Agreement, but with the added provision that plaintiff could be terminated only for cause, plaintiff points to the following facts: (1) between 1999 and 2001, and beyond, plaintiff and JAM continued distribution operations, (2) between 1999 and 2001, and beyond, no other distributors in Tang's territory carried Jinro products, (3) between 1999 and 2001, and beyond, plaintiff was allowed to use Jinro's marks, and (4) between 1999 and 2001, and beyond, plaintiff sold no competing products. Pl.'s Mem. at 1-2. *See Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, at 37 n.2 (2d Cir. 2001) (finding failure to sell to other suppliers evidence of an exclusive distributorship).

The fact that later negotiations failed does not preclude the existence of an implied contract during the period from 1999 through 2001. *See V'Soske v. Barwick*, 404 F.2d 495, 499 (2d Cir. 1968) ("[T]he mere fact that the parties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking effect prior to that event.").[14] In

---

(N.Y. App. Div. 1991)).

[14] Circumstance can also, of course, point against the existence of a contract. *See Millennium Expressions v. Chauss,* 2007 WL 950070 at *6 (S.D.N.Y. Mar. 30, 2007) ("If the circumstances create an inference that the parties did

*Martin*, the fact that the parties began to renegotiate their contract before the old contract expired weighed against the continuation of the old terms, but did not weigh against the finding of a new implied contract. 156 F.2d at 128-30. In the case at bar, the negotiations began well after the expiration of the 1997 agreement.[15] There was therefore a period when the parties performed in the absence of a written agreement and without any negotiations.

I nevertheless find that no rational trier of fact could find that plaintiff and defendants entered into a new, implied contract under which plaintiff could be terminated only for cause. Plaintiff points to the sixteen years of dealing between plaintiff and defendants to argue that he was assured he would remain the distributor of Jinro Soju in the Territory so long as he performed adequately since he was part of the Jinro "family." This is not sufficient to demonstrate an implied contract on the terms plaintiff advocates. *See Baron v. Port Authority of New York and New Jersey*, 105 F. Supp.2d 271, 279 (S.D.N.Y. 2000) (no implied

---

not intend to continue their relationship on the same terms, then no new contract will be implied") (*citing Sevel Argentina, S.A. v. General Motors Corp.*, 46 F. Supp.2d 261, 268 (S.D.N.Y. 1999)).

[15] The 1997 agreement expired on November 30, 1999. The date of the letter from JAM saying that it considered the 1997 agreement expired was August 3, 2001. JAM asked plaintiff to enter to a new agreement on November 15, 2001.

contract where plaintiff claimed she was assured that "people work[ ] at the Port Authority until they retire[ ]," that seniority was significant, and that Port Authority had a tradition of "career service"); *Schermerhorn v. Mobil Chemical Co.,* 2001 WL 50534, at *5-6 (D.Conn. Jan. 9, 2001) (interpreting Connecticut law, holding that oral representations that plaintiff had excellent job prospects and that he was likely to retire at the company were insufficient basis for implied contract).[16]

While plaintiff and defendants did have a long relationship, plaintiff's argument ignores the fact that the bulk of that relationship had been governed by contracts, which either expired by their terms or permitted termination upon notice following the expiration of the term of the contract. *See* 1997 Agreement, at 2; *see also* 1992 Agreement, at 2.[17, 18]

---

[16] Plaintiff cites to *Lano Equipment, Inc. v. Clark Equipment*, 399 N.W.2d 694 (Ct. App. Minn. 1987), which affirmed the grant of a temporary injunction against a manufacturer who wanted to terminate a distributor who had been distributing the defendant's product for 26 years. Due to *Lano's* posture, however, the court did not reach a conclusion on the merits of plaintiff's claim.

[17] Plaintiff's reliance on *Marcraft Recreation Corp. v. Frances Devlin Co.*, 459 F. Supp. 195 (S.D.N.Y. 1978) is misplaced. The course of performance evidence in that case was bolstered by an arguably confirmatory letter. *Id.* at 196-97. Plaintiff has not introduced such a letter into evidence.

[18] Distributorship agreements with no stated duration require an extra level of scrutiny and "must be analyzed to determine whether they are merely a type of employment contract which may be terminable at will, or whether they require commercial activities which go further than an agreement for personal services." *Italian & French Wine Co. of Buffalo, Inc. v. Negocants U.S.A.*, 842 F. Supp. 693, 699 (outlining principles enunciated in *Colony Liquor Dist., Inc. v. Jack Daniel Distillery,* 22 A.D.2d, 247, 254 (N.Y. App. Div. 1965) and

Accordingly, as no rational trier of fact could conclude there was an implied contract on the terms plaintiff originally argued, no rational trier of fact could conclude that defendants were required to give plaintiff reasonable notice of termination, as such notice is required only when there is a contract. *See* U.C.C. § 2-309(3). Accordingly, upon reconsideration, I again grant defendants' motion for summary judgment on plaintiff's reasonable notice of termination claim.

> III. <u>Plaintiff's Motion for Reconsideration on the Breach of Covenant of Good Faith and Fair Dealing Claim</u>

Plaintiff also moves for reconsideration of the October 11, 2005 Memorandum Opinion and Order granting defendants' motion for summary judgment on plaintiff's claim for breach of covenant of good faith and fair dealing. Plaintiff contends that the Court overlooked case law which supported this claim.

In the previous Opinion, I noted that simply failing to renew plaintiff's distributorship was not in itself a breach of the covenant of good faith and fair dealing, as there was no obligation to renew in the 1997 Agreement. *Tang*, 2005 WL 2548267, at *9. Plaintiff argues that this conclusion is at odds with my

---

*Haines v. City of New York*, 41 N.Y.2d 769(N.Y. 1977)). In the latter case, the contract is terminable only after a reasonable duration and after reasonable notice is given. *Id*. This requirement, however, is relevant only when there is an agreement without a stated duration, which there is not in this case.

ruling that the 1997 Agreement expired. There is, however, nothing inconsistent about these conclusions because, in the absence of any contract following the expiration of the 1997 Agreement, no such duty could arise.

Insofar as plaintiff now contends that the covenant arose through the implied contract he argues the parties entered into following the expiration of the 1997 Agreement, as I concluded, *supra*, that no reasonable fact finder could find an implied contract arose following expiration of the 1997 Agreement on the terms plaintiff argued, plaintiff's contention that there was an implied covenant of good faith within the implied contract is unavailing.

In any event, any breach of the duty of good faith and fair dealing inherent in the implied contract is subsumed in the claim for breach of the duty of reasonable notice, unless plaintiff can point to facts showing bad faith. *Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."). Plaintiff argues that the record discloses such additional facts

showing bad faith, namely defendants' "improper desire to eliminate [plaintiff] and take over [plaintiff's] business." Even if facts existed from which such a desire could be inferred, there is nothing from which to conclude that it was "improper" or in bad faith.

Accordingly, plaintiff's motion for reconsideration on his claim for breach of covenant of good faith and fair dealing is denied.

### Conclusion

For the reasons set forth above, plaintiff's motion for reconsideration is granted as to the breach of contract claim. Upon reconsideration, however, defendants' motion for summary judgment is again granted. Plaintiff's motion for reconsideration is denied as to the breach of the covenant of good faith and fair dealing claim. The Clerk is directed to enter judgment in favor of defendants and to transmit a copy of the within to all parties and the assigned Magistrate Judge.

SO ORDERED.

Dated :   Brooklyn, New York
          September 3, 2008

          By:    /s/ Charles P. Sifton (electronically signed)
                 United States District Judge